Good morning. May it please the Court. My name is Attorney Thomas Pamela, appearing on behalf of the Petitioner in this matter. I'd like to reserve two minutes for rebuttal time. I would like to begin by addressing the intervening Supreme Court case, Pereira v. Sessions, and how it affects this matter, unless the panel wanted to discuss any of the other issues first. We are requesting a remand in this matter so Petitioner can file a cancellation— Under Pereira? Sorry? Under Pereira? Yes. Isn't there a big difference between Pereira's case and your case? Not in my—my position is no, Your Honor. You got an—your man got an NTA, a notice to appear, without a place and date. Correct. And then he got another one, and he had a hearing. And that one gave him his place and date, right? I did not see the notice to appear with an actual date or place of a hearing. Regardless whether it had a place and date, he did get a notice, but he got a hearing, did he not? He did, yes. And he appeared. And the hearing was within the 10 years of his residency? It was. And he appeared at the hearing? He did. Pereira v. Sessions says that— I mean, it's an inconvenient fact, isn't it? No, not— I mean, the whole idea behind Pereira v. the Pereira case was he never found out when he was going to get a hearing. He had a hearing in absentia, et cetera, et cetera, right? Your man didn't get a hearing in absentia. He got a hearing. That's correct, Your Honor. But I think when you look at the decision, what it boils down to is that a notice to appear that does not specify the time or place of the hearing is not a notice to appear. It doesn't trigger this offering. Even if the Petitioner appears? I'm sorry? Even if the Petitioner somehow got notice and somehow appears? Yes, even then. And the fact remains is that it's not entirely clear what would trigger the stop-time rule. The issue here is when did his physical presence get cut. And right now, obviously, he has a 10 years. He has a qualifying relative. He's eligible for 42B cancellation. The issue is when was his continuous physical presence cut. Let me ask you this, counsel. How did he know to appear at the hearing if the notice to appear did not have a place and time of hearing? He subsequently received a hearing notice. It was separate from the notice to appear. All right. And I'm just trying to understand your argument. Sure. And your argument is because the notice to appear was deficient, based on PERERA, the time for cancellation of removal that he would allow for his eligibility is extended until he actually gets a notice to appear? It continues to run until when is not entirely clear right now. We would request a remand so that issue of when the continuous physical presence gets cut, when that actually occurred. That's what the remand would be focusing on. So talk to me about what procedural steps, just to better understand if this is possible or how this would play out. What procedural steps would your client need to take at this point? So if the matter is remanded under PERERA, what we would do is we would go before the immigration judge and assert that he is now eligible for 42B cancellation because he's been here for more than 10 years at this point. My specific argument would be at that time that his continuous physical presence continues to run until a final decision is made on his application. The stop-time rule is very clear. Your continuous physical presence is cut upon proper service of a notice to appear. And is that in a reg or the statute? That's in the regulations for the stop-time rule. It's the service of a notice to appear. He was never properly served with a notice to appear pursuant to PERERA v. Sessions. So his continuous physical presence up until today continues to run. If the immigration judge wants a brief as to whether the concession of service at the preliminary hearing cut his time, we can do that. It's my position that that did not cut his time, but that's an issue that I think should be addressed on remand. It's your position that the second notice he got, which, as I understand it, contained the date, time, and place where he was supposed to appear, that that's not a notice to appear? No, because it didn't contain the charges. A notice to appear has to contain the charges of removal and date and place of a hearing. And the first notice, well, the first notice contained the charges, correct? Charges, yes. And it also told him you'll be notified of the date, time, and place to appear in a later notice, correct? Yeah, to be set, it said specifically. I think you referenced or someone referenced one of our circuit panels has done this in a memorandum disposition of remanding it back. Is that correct? Yes. I searched. There's a few cases the Ninth Circuit has remanded based on PERERA up until this point. And who are similarly situated to your client? Yes. It's for 42B cancellation. There's the other issue, obviously, of whether the whole proceeding should be terminated based on PERERA. That's not what I'm asserting at this point. Right now, it's just so he can get an opportunity to apply for cancellation, something he was not afforded in the previous proceedings. Did the VA at their hearing, did they look at this issue at all? No, because their decision was issued prior to PERERA. So 42B wasn't a relevant issue at that time. I assume now, obviously, they would. And is there a Second Circuit case that was referred to as well? Actually, yes, Your Honor. There is a Second Circuit case. There's a few cases that have been remanded. Two in the Ninth and two in the Second. I had a list here somewhere. But, yes, it appears that it's at the very least it's an issue that needs to be addressed. It looks like Castillo v. Sessions in the Ninth Circuit, Mano Salvas v. Sessions in the Second Circuit, and Guillen v. Sessions in the Ninth Circuit. Again, all remanded for a 42B cancellation application. Have you cited those cases in the 28J letter? No. I found these last night. I apologize. They weren't cited in the 28J. Would you kindly write down the names of each of those cases, give them to the clerk before you leave? Certainly. I have them typed right here. I can just file this. My handwriting is a little messy sometimes. Let's suppose that for one reason or the other, as disappointing as it might be, we don't agree with you. Sure. Do you have any other points that you wish to make? Sure. Just briefly, obviously, the issue initially was the withholding and CAT application that Petitioner filed. There was an adverse credibility determination in his proceedings. It was my argument that a relevant factor that was ignored by the immigration judge and the BIA was the manner in which prior counsel prepared the case. As case law states, it's a totality of the circumstances, analysis, credibility. And the manner, which is on the record, it's clear from the record that he — most of the reasons why she found him to be lacking credibility was due to the attorney's preparedness rather than actual assistance. That's an ineffective assistance of counsel claim. Not per se, Your Honor. It's a factor that I argue should have been considered when they made the analysis for credibility, and they did not take that into consideration. So, I mean, if I understand this, in your brief, you argue that the BIA erred in upholding Mr. Shahone's adverse credibility determinations because of Mr. Shahone's attorney and actions that Mr. Shahone's attorney took. But it appears, at least based on my review, the only, I guess, error that can be attributed to Mr. Shahone's counsel is failure to submit some corroborating evidence. And if I could just finish. But it doesn't seem that that failure accounts for inconsistencies between Mr. Shahone's declaration and his testimony or Mr. Shahone's inability to give specific answers to many of the IJ's questions, which the BIA also relied on. So I'm just trying to figure out how can we say that the BIA's adverse credibility determination was not supported by substantial evidence here when not all of the evidence that the BIA relied on was attributed to Mr. Shahone's counsel? I understand, Your Honor. I think there was a few things. Actually, corroboration was one of them. Failure to update the application and declaration was a big issue, and that fell squarely on prior counsel. He even admitted on record that he was the one that failed to update the declaration and information, and he had no excuse for that. He admitted that on record, and that was something that just wasn't considered in the credibility determination. If it was counsel admitting on record that he didn't update the information and prepare the information as it should have been, that should have been something that at least was discussed in the decisions, and it wasn't. But that only accounts for a small or it seems like a slice of what the basis was for the adverse credibility. I disagree, Your Honor. I think the main problem that the immigration judge had was the difference between his testimony on the day of the individual and the information in the application that was previously filed. They — there was a lot of information he testified to that wasn't included in the initial application declaration, and again, that fell on the attorney, not Petitioner. I'll — I only have 10 seconds left if anyone has any other questions. Briefly, if he had ineffective assistance of counsel, as I understand it, his remedy would have been to file a motion to reopen with the BIA. Is that correct? That's one remedy, yes. Another remedy would be to get it remanded now so he can get another crack at it. Again, this was another — just a factor, a relevant factor within the credibility analysis. I don't think you answered the judge's question. I said it was one remedy. It's one remedy, yes. It's not the exclusive remedy? No. I believe it could be remanded now based on failure to properly analyze the credibility issued by the BIA and the immigration judge. They ignored one relevant factor in that analysis. All right. Thank you very much. We'll give you a minute. Thank you. May it please the Court. Matthew Spurlock on behalf of the United States. If I could, I would just briefly go back to the Pereira issue, because that was raised first and the panel seemed to have questions about that. In R-28J, as we stated in 28J, we don't believe that Pereira is such — is broad as is suggested by Petitioner in this case, such that a subsequent — the NDA was sent, I believe, in early October, and seven days later, the subsequent notice of the hearing was sent to Petitioner, which specified a specific date and place for the hearing. And that's the hearing that the Petitioner complied with, showed up, and was in the hearing. So there's really no issue of whether all the issues that were raised in Pereira about the notice and the specificity under the statute aren't really at issue here, because — Well, but it does — do you agree that the notice to appear was deficient? Under Pereira, the notice to appear would have been deficient because it didn't — And the question is now, what happens as a result of that deficient notice to appear? How significant was it? I understand that you're arguing that, well, eventually there was a hearing, and, I mean, there was a whole hearing and a determination made. And that's what we have to try to determine. It looks like a few other courts, the Second Circuit and our own, have remanded these cases without determining whether or not the stop-time rule was triggered in light of the And haven't — have not, you know, made room. They just simply have remanded. And I'm trying to figure out why shouldn't we do the same at this point in time? Yes, Your Honor. We would argue that the subsequent notice of hearing that was sent less than a week from the notice to appear is adequate to remedy the initial And what's your best authority for that? Because it didn't contain the charges and your own regs, I think, dictate and require that the notice to appear, if it's to be valid, should have the charges and the date and the time and all of these things that you normally argue are what are required and that you complied with. Yes, Your Honor. And the initial notice to appear did have everything in it that's required except for the time and place. And the Supreme Court has clearly stated in its — in its per era that when you have that language that you all have been putting on there, which for reasons I understand, that, you know, time and place for the hearing to be determined at a later date was insufficient because it's tied to the stop clock. Yes. And it seems true that the cancellation of removal stop — ending time for Mr. Shahone would be affected here. I think you're right, Your Honor. And I think our argument is, as soon as he received personal service of that notice of hearing, which specified a place and time for his hearing, that was enough to fulfill Perere's requirements for the stop-time rule. I think that's our argument. Did the notice of hearing refer to the NTA and incorporate by reference the charges in the NTA? I'm not 100 percent positive about that, Your Honor, but I believe — Don't you have it here? I certainly can't. Sure. So the October 16th notice of hearing, I think I referenced that in my 28J response. It states that, Please take notice that the above caption case has been scheduled for a master hearing before an immigration judge on February 16th, 2010, at 9 a.m. And it states it does not repeat the charges that were in the October 8th NTA, which did say hearing to be set, time and date to be set. Does it refer to them and say, Your hearing will take place on the charges which we have previously sent you on October the 8th? And where does that affect? I don't believe it does, Your Honor. So it seems like the Supreme Court has made a determination regarding when the stop-time rule, because it's — I mean, it seems like it's tied to the 10-year required — that's required for a continued residency, doesn't it? That's correct, Your Honor. The Court concluded that the stop-time rule is controlled by the statute. And by the statute, meaning by your reg, and that the end date for the cancellation for someone would be to determine how long they've been continuously in this country — whether or not they've been continuously in this country for 10 years. The end date that they have to work back from, the Supreme Court, at least my understanding of Pereira, is from the date that they get a valid notice to appear that has a date and time of their hearing, and that's going to trigger the end stop time. Is that not correct? That's correct. But our argument stands that the subsequent notice fulfilled that requirement. I mean, you have the two documents that have the charges that he was charged with and the time and date of hearing. Mr. Spurlock, let me ask you something else. In your 28J letter of August 6th, you make the argument that the Petitioner did not actually file an application for cancellation of removal, and therefore the claim is waived, right? That's correct, Your Honor. There's something in there that's rather odd, and maybe you can help me with that. The second line from the bottom, get your letter out, would you please? I think I have it. It said — it says, Petitioner did pursue this form of relief. Did you mean to say he did not? I think I meant to say he did not. That's correct. That would be a typo, Your Honor. I'm sorry about that, Your Honor. He never pursued this form of relief during his immigration proceedings? He wouldn't have if he didn't think he was eligible. That's correct, Your Honor. Right. And so extending that end time likely, at least according to his counsel now, would have affected his eligibility. If it was known at the time that certainly prayer was subsequent to his hearing. Hasn't this issue been addressed by other circuits also, and haven't they been remanding these cases back to the BIA for further proceedings? I don't believe they were in this specific circumstance, where you had somebody who received a subsequent notice of a hearing. That occurred before the — when the cancellation of removal would have expired, the stop-time rule would have expired. What was the Second Circuit's situation? I'm not sure, Your Honor. Well, then why do you say that you don't think it was the same situation? If the Court would like us to supplement our briefing in this case. No, I'm just curious about the statement you just made right now when you said that that was different. Other circuits are different. I think the only other circuit, at least that I'm aware of right now, is the Second Circuit. And for you to make a broad statement like that and to not know exactly what it — what that statement supports and whether it's supported or not, I'm curious why you would make that kind of statement. I would ask that we be able to supplement our briefing on this issue so I could make sure that I'm giving the Court the correct answer on that. My understanding is other cases that have — have ruled that way haven't been in this — Tell me what other cases. I would like to do that in supplemental briefing, if I could, Your Honor. This was an issue that was raised last week in this case. Yeah. But I'm only aware of the Second Circuit and then our own circuit who have been remanding these cases. And if you're aware of any other circuit, after you got the 28J letter — Yes, Your Honor. I would — I would — I would like to provide this Court with any cases that would support our — our argument on this. And I will tell you, and perhaps the other judges read it differently, I don't see any factual difference between this case and that Second Circuit case where it was remanded back. That's why I asked the question. Okay, Your Honor. Thank you. Thank you, Your Honor. I would just very briefly, to address the issues in the case, the Petitioner's entire case before this Court is essentially that the immigration — the attorney before the immigration hearing was ineffective in his representation of his client, of the Petitioner. But the problem with that case — the problem with that argument is that that issue has never been brought forth to the agency, that there was ever any problems with the — the former counsel's performance during the case. If this would have been brought in a motion to reopen, which is normally the process for this to be raised before the Board, the Board could have looked at these issues and this would have been a very factual determination. It would have included a lazada determination as to whether or not the Petitioner had gone through all the steps to make a ineffective assistance of counsel argument. And then that could have been brought to the — the attention of the Board, and the Board could have considered those issues on first glance. Is that remedy still available to the Petitioner at this time? If he filed a motion to reopen. I don't know what the Board would do with it. It would be certainly untimely at this point, but he certainly could file a motion to reopen before the Board to raise the ineffective assistance of counsel claims. And does the Board have discretion to reopen? It does. They're not statutorily or by regulation prohibited. Well, they — they're not — they're not prohibited from considering a motion to reopen by any means, but they could consider — they would certainly have to consider the timeliness factor in the motion to reopen, that it is untimely. That would have been — that would be one issue they'd have to consider. Which I assume is the position. It would be untimely. That would be the position the government would take. But they could certainly — they could certainly argue that there have been intervening circumstances and changes in circumstances that would have allowed the — that would have allowed the Petitioner to reopen the case if there was something that — and they could indeed reopen it. And I would just make one — one quick point, that even — even aside from the ineffective assistance of counsel claim that he makes, that the adverse credibility determination was inappropriate and that the rejection of corroborating evidence was inappropriate, I would also argue that even if all that was not the case, he still never made it a nexus to a protected ground in this case. And that has nothing to do with — that's just the nature of the Petitioner's claim, and that has nothing to do with whether or not counsel was ineffective. That's just Petitioner's claim. Kennedy. Did he claim particular social group? His — his particular — our argument is, Your Honor, that his claim for his particular social group was not adequate. There was not a nexus to that particular social group. None of his family members had ever been threatened or harmed by anybody, any gang members or anybody in that community. So there's — there's no evidence in the country conditions that anybody who is a family member of law enforcement in Guatemala is subject to persecution or being targeted by gangs or anybody. All right. I think we've taken the best of your time. Thank you. Mr. Quartillo, do you want to spend a minute on rebuttal? Mr. Chairman? Go ahead. You have a minute. Just — just briefly, because I wasn't able to get to this point. I argued in my opening brief that a nexus to a protected ground and past persecution was actually established, and this is separate from the adverse credibility determination. Petitioner testified on two separate occasions during his individual hearing that he received death threats from gang members because of his family that were police officers. And he did provide corroborating evidence in the form of those two documents showing his two family members that are police officers. The immigration judge eventually conceded that those do establish that he had family that were at least at one point or currently police officers. Was there any evidence that the government was unwilling or unable to quash the persecution? There wasn't evidence of that specific thing, but it — Isn't that required? I'm sorry? Isn't that required? You can't have persecution by private individuals with no government intervention. Government acquiescence is required under withholding of removal, but it wasn't specifically stated in the immigration judge decision that government acquiescence wasn't established. She thought it was an adverse credibility determination and — and denied everything based on that. The fact is, is that he did present a proper protected ground, family of police officers. He did show a nexus, the death threats related to that family that are police officers. Death threats is past persecution. It doesn't have to be a physical harm that you — that you suffer. So all that was established, and the immigration judge didn't specify why that was insufficient to at least approve the application or — or further discuss it. Instead, she focused on, I think, the 1998 party and the threats at that time, something unrelated to the — the important claim, and denied everything based on that. But again, past persecution, proper nexus was established through testimony and those documents. All right. Thank you very much for your argument. The case of Chahon v. Sessions is submitted.
judges: Bea, Murguia, Soto